IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| ROBERT SOSA III, § | |
| *Plaintiff,* § | |
| § | |
| v. § | |
| § | CIVIL ACTION NO. |
| § | |
| HOUSTON INDEPENDENT SCHOOL § | |
| DISTRICT § | |
| *Defendant.* § | |

### PLAINTIFF'S ORIGINAL COMPLAINT

This action is arising under Titles I and II of the Americans with Disabilities Act ("ADA"), brought as an individual action to recover damages and attorneys' fees owed to Plaintiff, ROBERT SOSA III, owed by Defendant, HOUSTON INDEPENDENT SCHOOL DISTRICT, and its subsidiaries.

#### I.   Parties

1. Plaintiff, ROBERT SOSA III, is an employee of Defendant, HOUSTON INDEPENDENT SCHOOL DISTRICT.

2. Defendant, HOUSTON INDEPENDENT SCHOOL DISTRICT ("HISD") is a Texas government entity that employs Plaintiff. With respect to Plaintiff, Defendant is subject to the provisions of Title I and II of the American with Disabilities Act ("ADA"), as Defendant is state

or local employer. Defendant is a state or local agency that employs 15 or more people, and must comply with Title I and Title II of the ADA.

3. Defendant may be served with process via F. Mike Miles, Houston School District Superintendent of Schools at 4400 W. 18th Street, Houston TX 77092.

## II.   Jurisdiction and Venue

4. The Court has jurisdiction under 29 U.S.C. §§ 1331 and 1345, and 42 U.S.C. § 12133. The Court may grant declaratory and other relief pursuant to 28 U.S.C. §§ 2201 and 2202.

5. Venue is proper under 28 U.S.C § 1391, as the cause of action arose in this judicial district, and the events underlying this complaint arose in this judicial district as well.

## III.   Exhaustion of Administrative Remedies

6. Plaintiff has duly exhausted his administrative remedies with the Equal Employment Opportunity Commission ("EEOC") and was issued a Right to Sue Letter dated April 6, 2023. See attached as Exhibit 1.

## IV.   Factual Allegations

7. From August 2008 to present, Plaintiff was and is an employee of Defendant HISD. Plaintiff is employed as a Physical Education ("P.E.") Instructor at Longfellow Elementary School, a branch of Defendant HISD, located at 3617 Norris Drive, Houston, Texas, 77025.

8. At all relevant times herein, Plaintiff has been and is employed full-time at a salary of $70,000 annually.

9. Plaintiff has been employed for 15 years with Defendant, with excellent evaluations no negative marks, disciplinary action or write-ups.

10. Plaintiff is also a member of the Houston Federation of Teachers ("HFT") union.

11. In August 2017, Ms. Kathleen Keafer (hereinafter "KEAFER"), an agent and employee of Defendant, was appointed principal at Longfellow Elementary School. Thereafter, KEAFER was effectively Plaintiff's supervisor.

12. In hopes of KEAFER, an agent employee of Defendant, being aware of Plaintiff's disability, Plaintiff sent KEAFER an email communication, informing her of his disability.

13. Therein, Plaintiff requested a continuation of his minor accommodation, that he had been previously and informally granted at his employment with Defendant. Plaintiff initially requested the following accommodations in writing: (a) to be permitted to sign in to meetings or trainings in the margin of the sign-in sheet, (b) to be provided a PowerPoint for trainings before the staff meetings to view on a computer screen to Zoom in, and (c) when sending students to the nurse or the office, that he be allowed to send the nurse/office referral via email rather than a paper slip. Plaintiff requested further accommodations at a later date.

14. Plaintiff requested the use of email in lieu of white paper, which causes a glare and material to be unreadable. Plaintiff suffers from a degenerative eye condition, retinitis pigmentosa, which causes glare and difficulty reading items up close on plain white paper. Defendant honored Plaintiff's medical accommodation under the previous principal, Norma Ferez-Gwynn, by simply utilizing email instead of paper, without any problems.

15. In response, KEAFER failed and refused to utilize email correspondence with Plaintiff in lieu of white paper. Rather, KEAFER instructed Plaintiff to file an ADA accommodation so that he would "have protection".

16. Plaintiff did not file for the ADA accommodation, but began receiving communications from Defendant's ADA committee of Defendant. Apparently, KEAFER initiated this request, as this was not done by Plaintiff.

17. In April 2019, KEAFER instructed Plaintiff that she would be "dissolving" his P.E. Instructor position and arranged an interview for Plaintiff with her "friend", the principal of MacGregor Elementary School for a "classroom position".

18. At this time, Plaintiff explained to KEAFER that because of his visual impairment paper was hard to read readily, so physical education was an ideal fit for him. KEAFER then instructed Plaintiff "you should just go on disability". Plaintiff confirmed the conversation via email correspondence and formally declined the potential interview.

19. In September 2019, Plaintiff lodged an accommodations request with Defendant's ADA Committee. Plaintiff received a letter stating that Defendant as in receipt of this request but needed more additional time to review his request.

20. In August 2020, Plaintiff sent a follow up correspondence to Defendant's ADA Committee and was merely told "be patient".

21. In April 2021, several months later, KEAFER called Plaintiff into her office to state that "I have some concerns and am relieving you of duty, pending a fit for duty evaluation." Plaintiff was then remanded to "rest at home" and be put on leave for the remaining school year, waiting for that elusive appointment.

22. In June 2021, Defendant sent and instructed Plaintiff to be evaluated by Defendant's physician Dr. Stanley Zimmerman. Upon examination and evaluation, Dr. Zimmerman determined Plaintiff was fit for duty and said he should return to work.

23. August 16, 2021 was first day of the school year of employment for the instructors at Defendant employer. At 8:00 a.m. on August 16, 2021, KEAFER called Plaintiff to her office. Plaintiff was remanded home again and not allowed to work. KEAFER instructed

Plaintiff that he had to perform another fit for duty evaluation. Thereafter, Plaintff was forced on administrative leave for the entire school year from August 16, 2021 through May 2022.

24. On May 6, 2022 Defendant's ADA committee finally approved Plaintiff's disability accommodation.  Plaintiff was finally able to return to work for the 2022-2023 school year.

25. Defendant's May 6, 2022 approval of an ADA accommodation was the first instance of Plaintiff's accommodation to be approved in six years and only after the EEOC mediation.

26. In August 2022, at the onset of the 2022-2023 school year in August 2022, KEAFER created difficulties for Plaintiff from the start. KEAFER would call Plaintiff into her office 2 to 3 times a week with "concerns".

27. KEAFER began to micromanage Plaintiff's work and activities and sending her Restorative Justice Counselor, Mallory B. Smith, and Magnet Coordinator, Andrea Pennington, to Plaintiff's class to take notes, repeatedly, and then fabricate infractions to punish Plaintiff.

28. In an effort to discriminate and harass Plaintiff, KEAFER directed Plaintiff's classroom to be changed, and orchestrated custodians moving heavy furniture while he was trying to teach class. KEAFER was impeding Plaintiff's ability to teach and confidently perform his job.

29.  On August 26, 2022, Plaintiff was called into a conference with KEAFER to discuss his accommodations. This was a guise by KEAFER to question student safety and student supervision after Plaintiff's 15 years of employment.

30.    On both September 2 and September 14, 2022, KEAFER demanded Plaintiff attend another conference of record to discuss her concerns. KEAFER unilaterally dismissed Plaintiff's version of events. Plaintiff submitted a written response to each concern in his file.

31.  On October 19, 2022 Plaintiff had a meeting of record with both KEAFER and Ms. Sandy Gaw, School Support Officer, per KEAFER's demand. As a result of the meeting, Plaintiff was relieved of duty for the third time. Plaintiff provided Defendant with written explanations for their alleged concerns for his file.

32. Plaintiff initiated his grievance process with his union, as Plaintiff's accommodations were finally approved, and he was able to work from August through October of 2022.

33. On April 6, 2023, the EEOC issued Plaintiff a Right to Sue Letter.

34. Days later, on April 12, 2023, Plaintiff was notified by Defendant in writing that he was not permitted to return to work, as Defendant deemed him unable to perform his essential job function. Defendant encouraged Plaintiff to apply for alternative positions.

35. Plaintiff is currently on administrative leave from his position with Defendant. Plaintiff was not extended a customary "Growth Plan" or any type of performance improvement plan, like all other employees.

36. On June 21, 2023, Ms. Sabrian Ikhimokpa, Leave Administration Senior Manager, an agent and employee of Defendant, sent an email to Plaintiff, inquiring as to Plaintiff applying for an alternative position with Defendant by June 30, 2023.

37. The alternative positions were of a lesser pay grade and not feasible with Plaintiff's disability.

38. Plaintiff responded to Ms. Ikhimokpa that he is a trained teacher, thus had no interest in pursing an alternate position with Defendant.

## V.     CAUSES OF ACTION

### Count 1: Disability Discrimination in Violation of ADA

39. Plaintiff repeats and realleges each and every allegation above, as set forth fully herein.

40. Plaintiff is disabled within the meaning of ADA. Plaintiff's condition is a permanent, degenerative disorder that impacts a major life function.

41. Plaintiff is qualified to perform the essential functions of his job as a P.E. teacher.

42. Plaintiff's disability was the cause of his adverse employment action with Defendant.

43. In particular, from August of 2017 onward, KEAFER's discriminatory practices against Plaintiff consistently escalated. From August of 2017, onward, Defendant rejected and denied Plaintiff's accommodation request for six years, merely telling him to "be patient".

44. Plaintiff was discriminated against on the basis of his disability in that in September of 2019 Plaintiff's position was abruptly "dissolved".

45. In April of 2021, Defendant forced Plaintiff to undergo a "fitness for duty" medical evaluation and put him on leave. Plaintiff passed this evaluation. Defendant did so as an act of discrimination on the basis of Plaintiff's disability.

46. Then, mere months later, within the first hour of reporting for work for the school year, Defendant again demanded that Plaintiff leave the campus and undergo another fitness for duty evaluation.

47. Again, Plaintiff was forced on administrative leave for discriminatory reasons, as his disability did not impair his ability to perform his essential job functions.

48. Plaintiff has suffered damages as a direct result of Defendant's illegal actions.

## Count 2: Failure to Accommodate in Violation of ADA

49. Plaintiff repeats and realleges each and every allegation above, as set forth fully herein.

50. Plaintiff qualifies as an individual with a disability under the ADA.

51. Defendant, Plaintiff's employer, had notice of his disability for the past 15 years of employment. In particular, Defendant was aware of Plaintiff's disability as in April of 2019, KEAFER urged Plaintiff "just go out on disability".

52. Plaintiff can perform the essential functions of his job as a P.E. teacher, instructing students.

53. Plaintiff requested the following accommodations in writing: (a) to be permitted to sign in to meetings or trainings in the margin of the sign-in sheet, (b) to be provided a PowerPoint for trainings before the staff meetings to view on a computer screen to Zoom in, and (c) when sending students to the nurse or the office, that he be allowed

to send the nurse/office referral via email rather than a paper slip. Plaintiff requested further accommodations thereafter.

54. Plaintiff's accommodation was honored by Defendant prior to KEAFER's appointment as Principal.

55. As of August of 2017, Defendant refused to make any reasonable accommodation for Plaintiff.

56. Defendant refused and denied Plaintiff's accommodation requests for six consecutive years, from 2017-2022.

57. Defendant then forced Plaintiff to lodge his request with an ADA Coordinator, which took years to approve. Then, upon approval, Defendant placed Plaintiff on leave, thereby preventing Plaintiff from utilizing the accommodation.

58. Furthermore, Defendant failed and refused to honor the ADA Accommodation, and instead urged Plaintiff in writing to seek and apply for an alternate, non-teaching position with Defendant.

59. Defendant offered alternate, non-teaching positions in administrative, customer service, technology and business. The alternate positions were also a failure to accommodate, as Plaintiff could not readily perform the essential job functions with his disability.

60. In so doing, Defendant did not extend an accommodation for the position Plaintiff was trained and experienced in performing.

61. Plaintiff has suffered damages as a direct result of Defendant's illegal actions.

## Count 3: Employment Retaliation

62. Plaintiff repeats and realleges each and every allegation above, as set forth fully herein.

63. It is unlawful to retaliate against an employee engaging in a protective activity and asserting his rights. "Protective activity" includes, but is not limited to the following: filing or being a witness with the EEOC charge, complaint, investigation or lawsuit; communicating with a supervisor about employment discrimination, including harassment; refusing to follow orders that result in discrimination; requesting an accommodation; engaging in the union grievances or collective bargaining.

64. Defendant retaliated against Plaintiff in that upon Plaintiff requesting accommodations, initiating a union grievance with his union HFT, and initiating an EEOC charge, Defendant methodically eradicated Plaintiff's teaching position and then Plaintiff's employment.

65. Plaintiff suffered damages as a result of Defendant's actions.

## Count 4: Constructive Termination

66. Plaintiff repeats and realleges each and every allegation above, as set forth fully herein.

67. Defendant's ongoing discrimination and retaliation for six years, made Plaintiff's employment condition so intolerable that any reasonable person would resign.

68. Defendant intentionally and systematically held out approval of Plaintiff's accommodation requests, dissolved his position without caused, forced Plaintiff on administrative leave on three (3) separate occasions without just cause, and instead of

allowing Plaintiff to return as a trained teacher, Defendant insisted that Plaintiff seek an alternative, lower-paying position without an accommodation.

69. To date, Defendant has failed and refused to issue Plaintiff a customary "Growth Plan" or performance improvement plan as a means to retain his position.

70. In so doing, Defendant constructively terminated Plaintiff from his employment as a P.E. teacher by precluding Defendant from performing his customary job.

71. Plaintiff suffered damages as a result of Defendant's illegal actions.

## VI.   Jury Trial Demand

72. Plaintiff requests a jury trial on all questions of fact raised in this Complaint.

## VII.   Prayer for Relief

73. Wherefore, Plaintiff ROBERT SOSA III respectfully requests this Court award his judgment against Defendant for the following:

   a. Actual and consequential damages

   b. Compensatory and non-compensatory damages;

   c. Front and back pay;

   d. Punitive damages;

   e. Attorneys' fees and costs;

   f. Pre-judgment and post-judgment interest allowed by law;

   g. Past and future non-pecuniary damages, including emotional pain, suffering, mental anguish, damage to reputation and other non-pecuniary damages as a result of Defendant's unlawful employment practices described above, in amounts to be proven at trial;

   h. Costs of court;

    i.  Such other further relief to which Plaintiff may be justly entitled.

Respectfully submitted,

**ROGER G. JAIN & ASSOCIATES, P.C.**

_/s/ Blair C. Maslowski_
Blair C. Maslowski
Texas Bar No. 24123268
S.D. Tex. Bar No.: 3669071
9301 Southwest Freeway, Suite 250
Houston, Texas 77074
Tel.: (713) 981-0600
Fax: (888) 200-6848
info@rogergjain.com
blair@rogergjain.com
**ATTORNEY FOR PLAINTIFF, ROBERT SOSA III**



**U.S. Equal Employment Opportunity Commission**
**Houston District Office**

Mickey Leland Federal Building
1919 Smith Street, 7th Floor
Houston, TX 77002
Intake Information Group:  (800) 669-4000
Intake Information Group TTY:  (800) 669-6820
Houston Status Line:  (866) 408-8075
Houston Direct Dial: (346) 327-7748
TTY (713) 651-4901
FAX (713) 651-4902
Website:  www.eeoc.gov

Denette Vaughn, Esq.
DISABILITY RIGHTS TEXAS
4747 S LOOP 289 # 120
Lubrock, TX 79424

        Subject:       Dismissal of Charge
                         EEOC Charge No.: 846-2021-20549 (Robert Sosa v Houston Independent School District - Longfellow Elementary)

Dear Mr. Vaughn:

The purpose of this letter is to inform you that the EEOC has conducted a final review of the above referenced charge of employment discrimination. After reviewing the information in the file, the EEOC does not believe that additional investigation would result in our finding a violation. The evidence failed to support the allegations of the charge.

Our investigation revealed the Respondent provided the Charging Party with his requested accommodations. However, as Charing Party cannot supervise students, an essential function of his job, he cannot perform the essential functions of the position. Also, Charging Party was not subject to an adverse employment action. He is on paid leave and remains an employee with the Respondent. Regarding Charging Party's retaliation claim Charging Party has not experienced any adverse employment actions. Charging Party has maintained his employment with the Respondent and received regular pay.

We fully understand that the parties to a charge often have very firm views that the available evidence supports their respective positions. Our final determinations must comport with our interpretation of the available evidence and use of our resources.

The Dismissal and Notice of Right to Sue will be mailed within five (5) days from the date of this letter. If you wish to request the Right to Sue, please do so prior to **Wednesday, April 4, 2022**.

The Dismissal and Notice will explain your client's right to pursue the matter in court. A lawsuit must be filed in Federal District Court within 90 days of receipt of the Notice. *If a lawsuit is not filed within the required 90-day period, the right to file a lawsuit in this matter will expire and cannot be restored by EEOC.*

If you have any questions, please feel free to contact me at (346) 327-7684.

                                                      Sincerely,

3/28/23

_____
Date                                                  Carine Jean-Marie
                                                    EO Investigator